IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA

CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED
March 07, 2025
LAURA A. AUSTIN, CLERK
BY: /s/ Amy Fansler
DEPUTY CLERK

| | |
|---|---|
| **PATRICIA GOOLSBY**, *on behalf of herself and all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> **BANK OF AMERICA, N.A.**, <br><br> Defendant. | CASE NO. __3:25cv00009__ <br><br> **CLASS ACTION** |

**COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF**

Plaintiff, Patricia Goolsby, by and through her undersigned attorneys, brings the following Complaint for Damages and Incidental Relief on behalf of herself and all others similarly situated, and states as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff is the victim of fraud. The perpetrators, who are unknown to Plaintiff, fraudulently misrepresented themselves in phone calls, in successful efforts to obtain Plaintiff's account information to conduct unauthorized transactions.

2. Plaintiff disputed the transactions with Defendant Bank of America, N.A. ("BOA"), but BOA has refused to treat the transactions as unauthorized. BOA's attempt to hold Plaintiff liable directly violates the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*, which protects consumers from liability for unauthorized transfers. It also breaches BOA's own promises regarding account security and customer liability for unauthorized transfers.

3. BOA also violated the EFTA by denying claims of unauthorized transactions without providing an adequate written explanation and without providing to consumers the

documents BOA reviewed during the investigation or even notice to the consumers of the consumers' right to investigation documents.

4. Both an explanation of the denial and a notice of the right to request these materials are required under the EFTA.

5. Plaintiff seeks to represent a class to remedy the harm caused by BOA's illegal behavior and ensure that these practices cannot continue going forward.

## JURISDICTION AND VENUE

6. The Court has jurisdiction pursuant to 15 U.S.C. § 1693m and 28 U.S.C. § 1331.

7. The Court also has jurisdiction pursuant to 28 U.S.C. § 1332(d) because this suit is brought as a class action, on behalf of a Class of over 100 Class Members, whose claims aggregate in excess of $5 million, and which includes members whose state citizenship is diverse from that of Defendant.

8. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this District because a substantial part of the events and occurrences underlying this litigation occurred within this District, and Defendant regularly conducts business here.

## PARTIES

10. Plaintiff Patricia Goolsby ("Ms. Goolsby") is *sui juris* and a citizen of Virginia residing in Charlottesville, Albemarle County, Virginia.

11. Plaintiff is a "consumer" as defined by the EFTA, 15 U.S.C. § 1693a (6).

2

12. Bank of America, N.A. ("BOA" or "the bank") is a national banking association formed under the laws of the United States and was, at all times relevant to this Complaint, a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9). It is a citizen of Delaware.

## FACTS

13. At all times relevant to the complaint, Ms. Goolsby had a checking account with BOA.

14. Ms. Goolsby's account was primarily for personal, family and household use. It was not a business or commercial account.

15. On September 17, 2024, Ms. Goolsby received a call on her cell phone from 1-800-421-2110 from a person purporting to be from BOA inquiring about her checking account.

16. The caller explained that someone was attempting to use Ms. Goolsby's debit card in Florida, and that the caller was initiating a fraud prevention process.

17. Ms. Goolsby told the caller that she was not in Florida and had not authorized any transactions there.

18. The caller offered to cancel Ms. Goolsby's debit card but would need to send a text message with a code to verify the identity of Ms. Goolsby.

19. A text from (or appearing to be from) BOA's customer service phone number with a code.

20. In reality, the person on the phone was a fraudster with a clever scheme.

21. The fraudster had "spoofed" the phone number they were calling from to make it appear that they were calling from BOA. (Spoofing is when a caller deliberately falsifies the information transmitted to your caller ID display to disguise their identity.)

22. There had been no fraud yet and the purpose of the call was to carry out the fraud.

23. The way the scheme works is to get a bank customer to provide enough information—under the guise of a fraud investigation—so that the fraudster can initiate a funds transfer.

24. In order to continue the ruse that everything that was happening to Ms. Goolsby was part of a fraud investigation, the fraudster asked Ms. Goolsby to confirm her mailing address so that a replacement card could be sent to Ms. Goolsby.

25. By information and belief, the fraudster opened an account at Navy Federal Credit Union in the name of Ms. Goolsby using the address provided by Ms. Goolsby.

26. By information and belief, the fraudster was using a money transfer app called Zelle, which partners with BOA. Zelle is a service that enables a person to electronically transfer money from his or her bank account to another registered user's bank account using a mobile device or the website of a participating banking institution.

27. To transfer funds using Zelle, the sender only needs to provide the recipient's mobile phone number or email. The transaction is typically completed within minutes.

28. When BOA receives a request to send money using Zelle, it sends a series of automated text messages to the accountholder seeking confirmation of the transaction(s).

29. In this case, the fraudster initiated several transfers to Navy Federal Credit Union leading to a flurry of confirmation texts to Plaintiff from BOA.

30. The fraudster explained to Ms. Goolsby during the phone call that these texts were automatically generated to confirm a "reversal code" for the fraudulent transactions.

31. BOA's relationship with its Checking Account customers is subject to a Deposit Agreement and Disclosures ("Account Agreement").

32. The Account Agreement provides, among other things:

> **Consumer's Liability for Unauthorized Transfers**
>
> Tell us AT ONCE if you believe your card or your personal identification number (PIN) or other code has been lost or stolen. Also, tell us AT ONCE if you believe that an electronic fund transfer has been made without your permission using information from your check. The best way to keep your possible losses down is to call us immediately.
>
> Your losses could include all of the money in your account plus any transfers from another account or any advances on a credit line if you are enrolled in Balance Connect® for overdraft protection.
>
> If you tell us within two business days after you learn of the loss or theft of your card or code, you can lose no more than $50 if someone uses your card without your permission.
>
> If you do NOT tell us within two business days after you learn of the loss or theft of your card or code, and we can prove we could have stopped someone from using your card or code without your permission if you had told us, you could lose as much as $500.

33. The Account Agreement also reflects BOA's unlawful policy with respect to fraudulent transfers, stating that:

> If you give your card, PIN or other access device or code to anyone, you may be liable for all transactions made by that person, or anyone else that person authorizes to use your card or PIN, until you advise us that such person is not authorized to use them. This does not cover situations where you provide account access because you were fraudulently induced or otherwise coerced through fraud or robbery.

34. Pursuant to the EFTA, liability for unauthorized use is sharply limited.

35. Specifically, 15 U.S.C. § 1693g(a), "Unauthorized electronic fund transfers; limit" states in relevant part as follows:

> In no event. . . shall a consumer's liability for an unauthorized transfer exceed the lesser of-
>
> (1) $50; or
>
> (2) the amount of money or value of property or services obtained in such, unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected.

5

36. Thus, the consumer's liability for unauthorized use is generally capped at a maximum of $50 for unauthorized transfers.

37. This cap is increased to $500 dollars where the consumer waits more than two business days after becoming aware of the unauthorized transaction to notify the financial institution.

38. The EFTA also prohibits banks from using account or other agreements to purportedly waive consumers's rights granted by the Act. 15 U.S.C. § 1693l.

39. It is common sense that a person seeking to prevent a fraudulent transfer that provides account information to a person falsely posing as a customer service representative is not authorizing the criminal to initiate additional fraudulent transfers for the criminal's benefit. *Dioquino v. Sempris, LLC*, No. CV1105556SJOMRWX, 2011 WL 13127143, at *10 (C.D. Cal. Dec. 8, 2011) (finding that voluntarily giving the card number for a purpose other than to authorize new purchases did not constitute furnishing the card for the purpose of the statutory language).

40. Any question regarding whether provision of means of account access to a criminal posing as a customer service representative constitutes "authorized use" under the statute (a nonsensical proposition) was resolved by the CFPB's Official Interpretation of the Regulation E, regarding 12 C.F.R. 1005.2(m).

1005.2 details unauthorized use as follows:

> (m) "Unauthorized electronic fund transfer" means an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit. The term does not include an electronic fund transfer initiated:
>
> (1) By a person who was furnished the access device to the consumer's account by the consumer, unless the consumer has notified the financial institution that transfers by that person are no longer authorized[.]

6

41. The Official Interpretation makes clear, however, that the carve-out for instances where the transaction is by someone who was provided with the access device by the consumer applies where a consumer knowingly provides the access device and authority to use it to make transfers to a friend, family member or co-worker, but does not reach instances where the access device is used by an employee of a financial institution or, critically, *where the access device was obtained by fraud*:

> 1. Transfer by institution's employee. A consumer has no liability for erroneous or fraudulent transfers initiated by an employee of a financial institution.
>
> 2. Authority. If a consumer furnishes an access device and grants authority to make transfers to a person (such as a family member or co-worker) who exceeds the authority given, the consumer is fully liable for the transfers unless the consumer has notified the financial institution that transfers by that person are no longer authorized.
>
> 3. Access device obtained through robbery or fraud. **An unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery.**

Official Interpretation of the Regulation E, regarding 12 C.F.R. 1005.2(m) (emphasis added).

42. Defendant's policy and practice of holding consumers duped into providing account access under false pretenses liable for charges initiated by fraudsters thus violates the EFTA.

## CLASS ALLEGATIONS

43. Plaintiff brings this suit on behalf of herself, and on behalf of all other persons similarly situated, pursuant to Fed. R. Civ. P. 23.

44. Plaintiff asserts her claims against Defendant on behalf of herself and the Classes defined as follows:

45. **EFTA Excess Consumer Liability Class.** All persons who:

7

 **a.** have or had an account with BOA; and

 **b.** notified BOA that they had been induced by fraud to provide another person with their account access device leading to unauthorized charges; and

 **c.** within one year prior to filing of this action, BOA determined that the transactions were authorized because the class member provided the access device to the fraud perpetrator; and

 **d.** who notified BOA:

  **i.** within two business of the alleged loss or theft and who alleged a loss of more than $50; or

  **ii.** at any time and who alleged a loss of more than $500.

46.  **Breach of Contract Class**. All persons who:

 **a.** Were parties to BOA's Personal Deposit Account Agreement; and

 **b.** notified BOA that they had been induced by fraud to provide another person with their account access device leading to unauthorized charges; and

 **c.** within six years prior to filing of this action, BOA determined that the transactions were authorized because the class member provided the access device to the fraud perpetrator; and

 **d.** for whom BOA did not determine that the account holder acted in concert with the perpetrator; and

 **e.** who notified BOA:

8

    **i.** within two business of the alleged loss or theft and who alleged a loss of more than $50; or

    **ii.** at any time and who alleged a loss of more than $500.

47. **EFTA Failure to Provide Notice Class.** All persons who:

  **a.** have or had an account with BOA; and

  **b.** notified BOA that the person's account contained an error; and

  **c.** within one year prior to filing of this action, BOA determined that an error did not occur; and

  **d.** for whom BOA did not deliver or mail, within 3 business days after the conclusion of its investigation, an explanation of BOA's findings concerning the error that contained notice of the consumer's right to request reproductions of all documents which BOA relied on to conclude that such error did not occur.

48. As used in the class definitions, the term "access device" means a card, code, or other means of access to a consumer's account, or any combination thereof, that may be used by the consumer to initiate electronic fund transfers, as well as any other device, information or means of access that meets the definition of "access device" pursuant to the EFTA, *see, e.g.* § 1005.2(a)(1).

49. Excluded from the Classes is anyone employed by counsel for Plaintiff in this action and any Judge to whom this case is assigned, as well as his or her immediate family and staff.

*Numerosity*

9

50. BOA is the second largest bank in the United States with more than 69 million customers throughout the United States.

51. "Imposter Scams" such as those described above have exploded over recent years. Indeed, some $498,000 imposter scams were reported to the FTC in 2020 alone. See https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-2020/csn_annual_data_book_2020.pdf.[1] (This figure is no doubt low as (a) only a fraction of victims report to the FTC, and (b) many of these scams are classified as "identity theft" or other equally plausible categories.)

52. BOA is well aware of the prevalence of such scams as shown on its websites. *See, e.g., https://www.bankofamerica.com/security-center/avoid-bank-scams.*[2]

53. As alleged above, BOA's policy and practice, reflected in BOA's Account Agreement, is to deny claims of unauthorized transfers if the accountholder provided the access code to the person initiating the transfer, regardless of whether the accountholder did so as the result of fraud.

54. Thus, there are undoubtedly thousands of customers that have already been victims of Defendant's unlawful policies and practices.

55. Since Defendant is a national bank, these customers are geographically dispersed across the United States.

56. And there are thousands more consumers who will be subject to these unlawful policies and practices in the future.

57. As such, each class is sufficiently numerous and geographically dispersed that joinder of all members is impracticable.

---

[1] Last accessed on 02/28/25
[2] Last accessed on 02/28/25

58. Although the exact number of members of each class and their addresses are unknown to Plaintiffs, they are readily ascertainable from Defendant's records.

*Existence and Predominance of Common Questions*

59. Common questions of law and fact exist as to Plaintiffs and all members of the Classes and predominate over questions affecting only individual members of the Classes.

60. These common and predominant questions include:

**a.** Whether Defendant's determinations that no error occurred on the grounds that transaction is authorized so long as the accountholder provided the access code to the person initiating the transfer—*i.e.* regardless of whether the account- holder did so as the result of fraud—are unlawful under the EFTA;

**b.** Whether Defendant's determinations that no error occurred on the grounds that a transaction is authorized so long as the accountholder provided the access code to the person initiating the transfer—regardless of whether the accountholder did so as the result of fraud—are a breach of Defendant's Account Agreement;

**c.** Whether Defendant denies disputes without providing the statutorily required notice regarding the consumer's right to investigatory documents and, if so, whether this violates the EFTA.

*Typicality*

61. Plaintiff's claims are typical of the claims of the Classes because Plaintiff is a member of the Classes and is subject to the same unlawful conduct as other members of the Classes.

62. Thus, Plaintiff's claims—based on the same facts and legal theories as the claims of all other members of the Classes—are typical of the claims of the Classes.

*Adequacy*

63. Plaintiff will fairly and adequately represent the interests of the members of the Classes. Her interests do not conflict with the interests of the members of the Classes she seeks to represent.

64. Plaintiff has retained counsel experienced in prosecuting class actions and in consumer protection matters. There is no reason why Plaintiff and her counsel will not vigorously pursue this matter.

*Superiority*

65. A class action is superior to other available means for the fair and efficient adjudication of the claims at issue.

66. The damages suffered by each individual member of the Classes may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.

67. Further, it would be virtually impossible for each individual member of the Classes to redress the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, the court system could not.

68. Individualized litigation presents the potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case.

69. By contrast, the class action device presents far fewer management difficulties and

provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

70. In the alternative, the Classes may be certified because:

**a.** the prosecution of separate actions by the individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes which would establish incompatible standards of conduct for Defendant;

**b.** the prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications or substantially impair or impede their ability to protect their interests; and

**c.** BOA has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## FIRST CLAIM FOR RELIEF
**(Electronic Fund Transfers Act, 15 U.S.C. § 1693 *et seq*.)**
**On Behalf of EFTA Excess Consumer Liability Class**

71. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

72. The Electronic Fund Transfer Act ("EFTA") places sharp limitations on consumer liability for unauthorized transactions. § 1693g.

73. Because Plaintiff did not give actual authority to the fraudsters to initiate the transfers, the transactions initiated by the fraudsters constitute as unauthorized electronic fund transfers under § 1693a (12).

74. These transactions do not qualify for the exception under § 1693a(12)(A) because Plaintiff did not "furnish" the fraudsters with the codes; instead, as provided in 12 C.F.R. § 1005.2, the transfers were initiated by people who obtained the codes from Plaintiff through fraud and therefore constitute unauthorized electronic fund transfers. *See, e.g.,* Official Interpretation of the Regulation E, regarding 12 C.F.R. 1005.2(m)(3).

75. By holding Plaintiff responsible for the full amount of the unauthorized transfer rather than the limits set forth by § 1693g(a), BOA has violated the EFTA.

76. As a direct and proximate result of Defendant's violations of the EFTA, Plaintiff is entitled to an award of statutory and actual damages as well as attorney's fees and costs.

77. Because Defendant does not conduct a good faith investigation of disputes involving third party access alleged to have been obtained by means of fraud and because Defendant lacks reasonable belief for believing consumers' accounts to not be in error in such circumstances, Defendant is liable for treble damages. § 1693f(e).

78. Because Defendant—by means of its blanket policy regarding third party access obtained by means of fraud or deception—knowingly and willfully concludes that customer accounts are not in error when such a conclusion could not reasonably be drawn from the evidence available to Defendant at the time of its investigation, Defendant is liable for treble damages. § 1693f(e).

### SECOND CLAIM FOR RELIEF
**(Breach of Contract)**
**On Behalf of Breach of Contract Class**

79. BOA's Agreement constitutes a contract between BOA and Checking Account customers.

80. By failing to limit Plaintiffs and the Class Members' losses to those amounts set forth in the Account Agreement, BOA materially breached the Account Agreement.

81. As a direct and proximate result of Defendant's breach of the Account Agreement, Plaintiffs and members of the Class lost more funds that they should have as a result of unauthorized transfers and are entitled to an award of actual damages.

### THIRD CLAIM FOR RELIEF
### (Electronic Fund Transfers Act, 15 U.S.C. § 1693 *et seq*.)
### On Behalf of EFTA Failure to Provide Notice Class

82. Plaintiff's communications to BOA in which she explained that she had not authorized charges or transfers showing on their accounts constituted notification to BOA of an error under § 1693f.

83. As a result of a notification complying with § 1693f, BOA was obligated to investigate the error and determine whether an error has occurred.

84. When BOA determined that an error did not occur, it was obligated to deliver or mail Plaintiff an explanation of its findings within 3 business days after the conclusion of its investigation, and upon request of Plaintiff, promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur. § 1693f(d).

85. BOA's form denial letters do not contain any meaningful explanation of BOA's findings and violate BOA's obligation to timely provide such explanation.

86. And, as set forth above, in some instances, BOA failed to provide written notice of its denial at all, and in doing so violated its obligation to notify the accountholders such as Ms. Goolsby of their right to request reproductions of all documents upon which BOA relied in concluding that no error occurred.

87. As reflected in the drafting of § 1693f(d), a critical part of a good faith investigation under the EFTA is informing the subject of the investigation of the reasons for the finding and providing the subject with notice of the right to examine the documents relied upon in making determinations.

88. BOA's failure to do so prevents accountholders like Plaintiff from learning the full basis for BOA's decision, potentially limiting their ability to successfully resolve their dispute, pursue their full rights, obtain additional information about the allegedly unauthorized charges, and fully understand the reasons for the adverse resolution of the dispute.

89. A consumer's right to a meaningful explanation of the basis for a finding of no error and to notice of the right to examine the documents relied upon by the Bank in making the adverse determination—are procedural rights which protect Plaintiff's concrete interests. Violation of those rights present a "risk of real harm" to that concrete interest.

90. Failure to comply with § 1693f(d)'s requirement of notice entitles Plaintiff and Class Members to statutory damages pursuant to § 1693m(a) as well as attorney's fees and costs.

91. For the reasons explained above, BOA's failure to provide the reasons for its error determinations also constitutes a failure to make a good faith investigation, a violation of § 1693f(e), entitling Plaintiff (and each member of the class) to treble damages.

**WHEREFORE,** Plaintiff seeks judgment in her favor and damages against Defendant and:

A. An order certifying this case as a class action under Fed. R. Civ. P. 23, naming Plaintiff as Class Representative, and appointing her attorneys as Class Counsel;

B. An award of actual damages, treble damages, statutory damages, attorney's fees and costs; and

C. An injunction to end BOA's unlawful practices; and

D. Such other and further relief as may be necessary, just, and proper.

Dated: March 7, 2025　　　　　　　　　　*/s/ Robert W. Murphy*_____
　　　　　　　　　　　　　　　　　　　　Robert W. Murphy
　　　　　　　　　　　　　　　　　　　　LAW OFFICE OF ROBERT W. MURPHY
　　　　　　　　　　　　　　　　　　　　VSB ID No. 96230
　　　　　　　　　　　　　　　　　　　　440 Premier Circle, Suite 240
　　　　　　　　　　　　　　　　　　　　Charlottesville, VA 22901
　　　　　　　　　　　　　　　　　　　　(434) 328-3100 Telephone
　　　　　　　　　　　　　　　　　　　　(434) 328-3101 Fax
　　　　　　　　　　　　　　　　　　　　E-mail: rwmurphy@lawfirmmurphy.com

　　　　　　　　　　　　　　　　　　　　Leonard A. Bennett
　　　　　　　　　　　　　　　　　　　　Craig C. Marchiando
　　　　　　　　　　　　　　　　　　　　CONSUMER LITIGATION ASSOCIATES, P.C.
　　　　　　　　　　　　　　　　　　　　VSB ID No. 89736
　　　　　　　　　　　　　　　　　　　　763 J. Clyde Morris, Blvd., Suite 1-A
　　　　　　　　　　　　　　　　　　　　Newport News, VA 23601
　　　　　　　　　　　　　　　　　　　　(757) 930-3660 Telephone
　　　　　　　　　　　　　　　　　　　　(757) 930-3662 Fax
　　　　　　　　　　　　　　　　　　　　E-mail: craig@clalegal.com

　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff*