CLERKS OFFICE US DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
July 08, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| Patricia Goolsby, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:25-cv-00009 |
| | ) | |
| Bank of America, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter is before the court on Defendant Bank of America's ("BOA" or "the Bank") motion to dismiss Count III of Plaintiff Patricia Goolsby's Second Amended Complaint. (Dkt. 35.) For the reasons stated below, the court will grant the motion.

## I.    Background

The court assumes familiarity with the facts of the case, which are discussed in detail in the court's previous memorandum opinion. (Mem. Op. at 1–2 (Dkt. 31).) In sum, a fraudster tricked Goolsby into disclosing her Bank of America account information and then used that information to empty Goolsby's account. (Sec. Am. Compl. ¶¶ 15–40 (Dkt. 34).) Goolsby disputed the transfer with Bank of America, which triggered an investigation by the Bank. (*Id.* ¶¶ 100–01, 103.) The Bank concluded that no error occurred on their end and sent Goolsby a denial letter. (*Id.* ¶¶ 103–05.) Goolsby requested the documents that BOA relied upon when making the determination to deny her claim, and BOA responded with a letter

containing screenshots of their internal systems that purportedly contain information regarding Goolsby's account and the relevant transfers. (*Id.* ¶ 125–27.)

Goolsby sued Bank of America on March 7, 2025, almost six months after the transfers. (*See* Dkt. 1.) She filed an amended complaint on May 28, (Dkt. 21), and the Bank moved to dismiss Goolsby's amended complaint on June 27, 2025, (Dkt. 25). On December 31, 2025, this court granted in part and denied in part BOA's motion to dismiss, finding that Goolsby stated a claim under the Electronic Funds Transfer Act's ("EFTA") Excess Liability provision (Count I) and for breach of contract (Count II), but that she failed to state a claim under the EFTA's Notice provision (Count III) or under the Uniform Commercial Code (Count IV). (Dkt. 32.)

Goolsby filed a second amended complaint on January 15, 2026. (Dkt. 34.) The second amended complaint realleges Counts I, II, and III, adding more allegations to Count III, which the court had previously dismissed. (*See* Sec. Am. Compl. ¶¶ 100–34.) BOA moved to dismiss Count III for failure to state a claim on February 12, 2026. (Dkt. 35.) Goolsby responded on March 19, (Pl.'s Resp. (Dkt. 44)), and BOA replied on April 6, (Def.'s Reply (Dkt. 45)). For the following reasons, the court will grant the motion.

## II.    Standard of Review

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). They do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual

allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In reviewing a motion to dismiss for failure to state a claim, "a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing*, 959 F.3d at 616.

### III.    Analysis

If a consumer notifies a bank of an "error" in their account, the EFTA obligates the bank to "investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days."  15 U.S.C. § 1693f(a).  An unauthorized electronic transfer is an "error" under the statute.  *Id.* § 1693f(f).  If the bank determines after investigation that an error did not occur, it is required to deliver a written "explanation of its findings" within three business days of the conclusion of its investigation.  *Id.* § 1693f(d); 12 C.F.R. § 1005.11(d)(1).  Along with this explanation, the bank must provide notice to the consumer of their right to request reproductions of all documents relied on to conclude such error did not occur.  15 U.S.C. § 1693f(d).  The bank must "promptly" provide those reproductions upon request.  *Id.*

Goolsby brings suit on behalf of herself and all those similarly situated,[1] seeking to represent a class "to remedy the harm caused by BOA's illegal behavior."  (Sec. Am. Compl.

---

[1] The court analyzes the claims in the second amended complaint as to Goolsby only and does not make any determination about the existence of a class.

¶ 5.)  In Count III, she alleges that Bank of America violated § 1693f of the EFTA by (1) failing to provide a meaningful explanation for its findings and (2) failing to provide the documents it relied on to make its findings.  (*Id.* ¶¶ 100–34.)

### A. Required Explanation of Findings

Goolsby alleges that the Bank provided only "form denial letters" that did not "contain any meaningful explanation of BOA's findings."  (Sec. Am. Compl. ¶ 104.)  She claims the letters "contain[ed] boilerplate statements that could apply to virtually any supposed investigation of an unauthorized transfer."  (*Id.* ¶ 105.)  BOA first explained that it "found that the transaction in question was validated using an authentication code sent to a valid phone number belonging to a signer on the account."  (*Id.* ¶ 106.)  Goolsby argues that such an explanation, "bereft of any detail such as the phone number supposedly used, does not give a consumer any idea about the substance of BOA's investigation."  (*Id.* ¶ 107.)  Next, BOA explained that its "investigation found that the transaction(s) in question was made to an account that provided a benefit to a valid signer on the account."  (*Id.* ¶ 108.)  Goolsby argues that such a conclusion was "impossible," since she never had a Navy Federal Credit Union account.  (*Id.* ¶ 109.)

Goolsby fails to sufficiently allege that BOA's explanations are insufficient to meet its obligations under § 1693f(d).  The statute obligates BOA to "deliver or mail to the consumer an explanation of its findings within 3 business days after the conclusion of its investigation." 15 U.S.C. § 1693f(d).  Goolsby alleges that BOA sent her a letter explaining that its investigation found that (1) the transaction was validated by an authentication code sent from the phone number listed as hers and (2) the funds had been sent to an account that appeared

to benefit her.    She cites two California federal district court cases to suggest that "communications [from banks] . . . [that] are devoid of any meaningful detail suffice to support a violation [of] the explanation requirements of Section 1693f." (Pl.'s Resp. at 13–14.)  But as BOA points out, the cited examples include allegations of letters that provide *no reason* for the banks to believe transactions were authorized.  (*See* Def.'s Reply at 3–4; Pl.'s Resp. at 13–14.) Bank of America did more than that here.

Courts have found sufficiently pleaded violations of § 1693f(d) where the plaintiff alleged that the defendant failed to respond *at all.  See, e.g.*, *Ghiya v. TD Bank*, No. 25-cv-4056, 2026 WL 1146621, at *2, *7 (D.N.J. Apr. 28, 2026); *In re Bank of Am. Calif. Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 913 (S.D. Cal. 2023); *Leung v. JPMorgan Chase & Co.*, No. 22-5211, 2023 WL 12242347, at *3 (E.D. Pa. Apr. 19, 2023).  Or where the defendant failed to respond in a timely fashion.  *See, e.g.*, *Williams v. Patelco Credit Union*, No. 24-cv-03464, 2026 WL 1097755, at *16 (N.D. Cal. Apr. 22, 2026).  Or where the defendant's response letter did not provide *any* reasoning for how it came to its conclusion.  *See, e.g.*, *Stephenson v. Navy Fed. Credit Union*, No. 23-cv-1851, 2024 WL 4257639, at *2, *6 (S.D. Cal. Sep. 20, 2024); *In re Bank of Am. Calif. Unemployment Benefits Litig.*, 674 F. Supp. 3d at 913; *Cifaldo v. BNY Mellon Inv. Servicing Tr. Co.*, No. 2:17-cv-00842, 2017 WL 6513342, at *3–4 (D. Nev. Dec. 19, 2017).  But Goolsby does not identify, nor does the court find, any authority finding that a plaintiff states a claim under § 1693f(d) when the response letter does include reasons why the defendant reached its conclusion.  Here, it is clear from Goolsby's allegations that the Bank provides two distinct reasons that led it to conclude that the transactions were authorized.  Goolsby may not have

been satisfied with those reasons, but that does not mean BOA was required to do more to meet its EFTA notice obligations.

Whether the transactions were in fact authorized is not relevant to Count III. Goolsby's assertions that BOA's conclusions are "impossible" or "wholly false" would relate to an excess liability claim under § 1693g—which the court already allowed to proceed—rather than a § 1693f claim about BOA's explanation of its conclusions. Accordingly, the court finds that Goolsby does not state a claim that BOA violated § 1693f by failing to sufficiently explain its findings.

### B. Provision of Underlying Documents

When Goolsby requested the documents that BOA relied upon in making its determination to deny her claim of unauthorized transfers, BOA responded with a letter that included screenshots relating to the transactions at issue. (Sec. Am. Compl. ¶ 127.) Goolsby claims that these screenshots "are indecipherable by anyone who does not work in the disputes department at BOA," and that BOA either "failed to provide the documents that BOA relied on in making its determination to deny her claim of unauthorized transfers or [failed] to otherwise reasonably explain the basis for said denial." (*Id.* ¶¶ 126–27.)

Goolsby again fails to sufficiently allege that BOA fell short of its obligations to reproduce the documents it relied on in making its findings. Section 1693f requires BOA to "promptly deliver or mail to the consumer *reproductions* of all documents" that it relied on to conclude that an error did not occur. 15 U.S.C. § 1693f(d) (emphasis added). Goolsby's allegations show that the Bank did exactly that; it provided screenshots of what appear to be its internal systems on which it relied. (Sec. Am. Compl. ¶ 127.) Goolsby's argument that

these are not "documents" because they are "random screenshots of what appear to be electronically stored files," (Pl.'s Resp. at 11), falls flat in the face of the statute's mandate that the Bank *reproduce* the documents it relied on.  If a bank uses electronic fraud controls, true and accurate reproductions of the "documents" it relied on will often look like screenshots or printouts of internal electronic systems or records.  And to the extent Goolsby intends to allege that the screenshots are *not* from the Bank's internal systems, she does not provide any factual support for such a conclusory allegation.

Similarly, the court is not persuaded by Goolsby's argument that the Bank did not provide the documents in an "understandable form" under Regulation E.  (*See* Pl.'s Resp. at 10.)  She relies on Staff Commentary on Regulation E, which provides, regarding requests for written documentation:

> *Request for documentation.* When a consumer requests copies of documents, the financial institution must provide the copies in an understandable form. If an institution relied on magnetic tape it must convert the applicable data into readable form, for example, by printing it and explaining any codes.

(*Id.*) (citation modified).  Goolsby asserts that there is "no way to decipher entries other than [her] identifying information, and certainly nothing to indicate how anything the Bank provided influenced the decision it reached." (*Id.* at 11.)  But read along with the Bank's initial explanation letter, even someone that "does not work in the disputes department at BOA," (*id.* at 7), can understand that the screenshots include transaction amounts, transaction types, transaction dates, requested channels, and account information—information that any bank would presumably rely on to determine whether transfers are authorized.  Section 1693f(d) only obligates the Bank to reproduce its internal documents in an understandable *form*, not to explain those internal documents in detail.

Finally, Goolsby argues that the Bank did not provide enough for her "to determine that these screenshots comprise the complete records the Bank considered versus cherry-picked portions of those records." (*Id.* at 11.)  To the extent that Goolsby's second amended complaint alleges the Bank did not provide full reproductions of its records, (*see, e.g.*, Sec. Am. Compl. ¶ 126), such a naked assertion is entirely conclusory.  The alleged screenshots appear to show the relevant transaction records and account information, and Goolsby provides no basis for her contention that those records are only part of the full picture.  Accordingly, the court finds that Goolsby does not state a claim that BOA violated § 1693f based on the documents it reproduced.

### IV.    Conclusion

For these reasons, the court will grant Bank of America's motion to dismiss, (Dkt. 35). Count III will be dismissed without prejudice.

An appropriate Order will issue.

**ENTERED** this 8th day of July, 2025.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE